COLUMBIA NATURAL RESOURCES,
INC.; Stocker & Sitler Oil Company,
Plaintiffs–Appellants,

v.

Zachary TATUM; Strata Exploration,
Inc.; Tatum Petroleum Ohio, Inc.; Ta-
tum Petroleum Corporation, Defen-
dants–Appellees.

No. 93–4299.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 12, 1994.

Decided July 11, 1995.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 5, 1995.

David D. Noble, Noble & Sullivan, Cleveland, OH, Jo Ellen Diehl Yeary, Columbia Natural Resources, Inc., Charleston, WV, for Columbia Natural Resources, Inc.

David D. Noble (argued and briefed), John E. Sullivan, III (briefed), Noble & Sullivan, Cleveland, OH, Jo Ellen Diehl Yeary, Columbia Natural Resources, Inc., Charleston, WV, for Stocker & Sitler Oil Co.

Jack R. Baker, Baker, Meekison & Dublikar, Canton, OH (argued and briefed), for defendants-appellees.

Before: MILBURN, BOGGS, and NORRIS, Circuit Judges.

BOGGS, Circuit Judge.

Columbia Natural Resources, Inc. and Stocker & Sitler Oil Company appeal an order holding that the phrase "pattern of racketeering activity" in the RICO statute, 18 U.S.C. § 1962(c), is "void for vagueness" as applied to these defendants and granting a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). For the reasons set out below, we reverse.

## I

This case arises out of a series of oil and gas contracts between Columbia Natural Resources and Zachary Tatum and his affiliated companies.[1] Columbia held approximately 47 leases allowing it to drill for oil on various pieces of real property belonging to Ohio farmers. These leases, which represented both shallow and deep drilling rights, were valid for a period of years, unless Columbia drilled wells and began to extract resources, in which case they were valid for the entire period of production. Apparently, in 1980 and 1981, Columbia executed several "farmout" agreements with Tatum and his companies. These farmout agreements authorized Tatum to begin shallow drilling on the land. The effect of this, once a well began producing, was to "validate" Columbia's lease, making it effective for the entire period of production. Columbia alleges that these farmout agreements opened a door for Tatum to commit a pattern of mail and wire fraud.

In particular, Columbia alleges that Tatum engineered various schemes that could be called "claim jumping." Columbia alleges that Tatum signed "topleases" with the landowner, which would be effective if Columbia's lease were not "validated." Tatum would then, through fraud and artifice, including

1. Throughout this opinion, "Columbia" refers to both plaintiffs. "Tatum" refers to Zachary Tatum and his affiliated companies: Strata Exploration, Inc., Tatum Petroleum Ohio, Inc., and Tatum Petroleum Corporation.

letters and phone calls, deceive Columbia about the status of drilling on the wells and about its interest in any topleases. In effect, Tatum would deliberately refrain from drilling wells and bringing them into production. This prevented Columbia from validating the leases and caused the leases to expire at the end of their term. Tatum would then use the toplease to secure the right to drill on the land.

Columbia was, by virtue of an "extension, renewal and replacement clause" in the original farmout agreements, entitled to royalties and the rights represented by any topleases secured by Tatum. Columbia alleges that Tatum misrepresented the status of drilling on the sites, lulling it into believing that its leases would be validated. Columbia also alleges that, after failing to drill the wells, Tatum evaded the effect of the extension clause by misrepresenting its interest in the topleases so that it could retain all of the royalties.

Columbia also alleges that on the leases Tatum validated by drilling, Tatum defrauded Columbia of its royalties. It did this, again using the mail and telephone, by misrepresenting the amount of resources it had extracted from the well and by deducting unauthorized expenses from the royalties owed to Columbia.

Columbia alleges that Tatum began another scheme in 1989. Tatum now used front men to obtain topleases and then capped producing wells. This deprived Columbia of a validated lease and caused its shallow and deep drilling rights to lapse. Columbia again alleges that Tatum did so with the intent to defraud Columbia and that Tatum used the phones and mail to further the scheme.

Finally, Columbia alleges that Tatum encouraged and assisted lawsuits designed to break Columbia's leases so that Tatum could utilize concealed topleases. In particular, Columbia alleges that Tatum assisted at least one lease-holder in such an effort, and then misrepresented his role to Columbia, through the mail and on the telephone, in an attempt to conceal his involvement.

Columbia sued Zachary Tatum and his affiliated companies for approximately $10,-000,000 in actual damages. Columbia's complaint included a series of contract and tort claims, as well as civil RICO claims. The claims of wire fraud, mail fraud and Travel Act violations served as the basis for the RICO suit.

The district court dismissed plaintiffs' first complaint for failing to comply with Fed. R.Civ.P. 9(b)'s requirement that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Columbia amended the complaint within the required 30 days, providing the court with a 75–page complaint and 34 exhibits totalling approximately 260 pages, alleging numerous RICO violations and pendent state law claims. The district court dismissed this complaint, apparently because the court held that the phrase "pattern of racketeering activity" was unconstitutionally vague and because the complaint failed to state a claim under Rule 12(b)(6). Furthermore, the court declined to exercise jurisdiction over the pendent state law claims.

Columbia argues, first, that the term "pattern of racketeering activity" is not void for vagueness as applied to these defendants; and, second, that it has alleged sufficient facts to allow the claim to proceed past a motion to dismiss.

## II

The due process clause of the Constitution provides the foundation for the void for vagueness doctrine. U.S. Const. amend. V. The Supreme Court did not accord vagueness a constitutional dimension until *Waters–Pierce Oil Co. v. Texas*, 212 U.S. 86, 108, 29 S.Ct. 220, 225, 53 L.Ed. 417 (1909). From the earliest cases to hold that a statute was unconstitutionally vague, (*see International Harvester Co. v. Kentucky*, 234 U.S. 216, 34 S.Ct. 853, 58 L.Ed. 1284 (1914), and *Collins v. Kentucky*, 234 U.S. 634, 34 S.Ct. 924, 58 L.Ed. 1510 (1914)), to the present, the Supreme Court has made it clear that the vagueness doctrine has two primary goals. First, to ensure fair notice to the citizenry; second, to provide standards for enforcement by the police, judges, and juries.

■ The requirement that the government write statutes that provide fair notice to those who must obey them is a traditional basis of the vagueness doctrine. "A statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally v. General Constr. Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). The requirement of fair notice is not applied mechanically or without regard for the common sense judgment that people do not review copies of every law passed.

■ The second concern, that of minimal enforcement standards, is related to the first. While the first involves notice to those charged with obeying the law, the second part relates to notice to those who must enforce the law, be they the police, judges, or juries. The standards of enforcement must be precise enough to avoid "involving so many factors of varying effect that neither the person to decide in advance nor the jury after the fact can safely and certainly judge the result." *Cline v. Frink Dairy Co.,* 274 U.S. 445, 465, 47 S.Ct. 681, 687, 71 L.Ed. 1146 (1927).

As a practical matter, the Supreme Court considers the latter concern the most important. This reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject. *See, e.g., Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) ("Although the doctrine focuses both on actual notice to citizens and arbitrary enforcement, we have recognized recently that the more important aspect of vagueness doctrine 'is not actual notice, but the other principal element of the doctrine—the requirement that a legislature establish minimal guidelines to govern law enforcement.'") (quoting *Smith v. Goguen,* 415 U.S. 566, 574, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974)).

The Supreme Court clearly stated the jurisprudential basis for these two parts in *Grayned v. City of Rockford,* 408 U.S. 104, 108–09, 92 S.Ct. 2294, 2298–99, 33. L.Ed.2d 222 (1972).

It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application.

■ Underlying part of the second test is a concern over the implications for the constitutionally mandated separation of powers, because vague laws pass much of the burden of "legislating" from Congress to the judiciary. *See, e.g., James v. Bowman,* 190 U.S. 127, 23 S.Ct. 678, 47 L.Ed. 979 (1903); *Trade–Mark Cases,* 100 U.S. 82, 25 L.Ed. 550 (1879); *United States v. Reese,* 92 U.S. 214, 23 L.Ed. 563 (1875). In the criminal context, this concern was recognized by Chief Justice Marshall. *See United States v. Wiltberger,* 18 U.S.(5 Wheat.) 76, 95, 5 L.Ed. 37 (1820) (Marshall, C.J.) ("[i]t is the legislature, not the court, which is to define a crime, and ordain its punishment").

The classification of a federal statute as void for vagueness is a significant matter. The Supreme Court has held that " '[E]very reasonable construction must be resorted to, in order to save a statute from unconstitutionality.' " *Chapman v. United States,* 500 U.S. 453, 464, 111 S.Ct. 1919, 1927, 114 L.Ed.2d 524 (1991) (quoting *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988)). *See also Crowell v. Benson,* 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a

cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").[2]

## III

The issue presented for our review is whether applying the Supreme Court's teachings on vagueness to the term "pattern of racketeering activity" leads to the conclusion that it is unconstitutionally vague. This examination takes place in light of not only the specific text of the statute but also in light of the Supreme Court's own discussions of the issue. We conclude that the term "pattern of racketeering activity" is not unconstitutionally vague.

The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity: ...." 18 U.S.C. § 1962(c). Tatum attacks the use of the phrase "pattern of racketeering activity," contending that it is unconstitutionally vague. However, our examination of the statute does not end with a simple review of the quoted language. Instead we turn to the rest of the statute.

RICO itself provides an initial definition of what constitutes a pattern of racketeering activity. A "pattern of racketeering activity" consists of "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5). The next inquiry, in order to understand fully the scope of the statute, is to determine what the statute classifies as an "act of racketeering activity."

The definition of an "act of racketeering activity" is found at 18 U.S.C § 1961. The definition includes crimes ranging from mur-

der, kidnapping, and extortion, see 18 U.S.C. § 1961(1)(A), to embezzlement of union funds, see 18 U.S.C. § 1961(1)(C), to the mail and wire fraud alleged in this case, see 18 U.S.C. § 1961(1)(B). Therefore, the determination of whether the phrase "pattern of racketeering activity" is void for vagueness is made in light of the phrase itself and those parts of the statute that define it.

■ There exists a preliminary question over the appropriate inquiry. The Supreme Court clearly requires an examination of the language of the statute itself. A second, potentially broader, inquiry is to examine whether the "continuity plus relationship" test of *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) is itself void for vagueness. The Third Circuit appears to have endorsed this second approach in *United States v. Pungitore*, 910 F.2d 1084, 1103 n. 15 (3d Cir.1990), *cert. denied*, 500 U.S. 915, 916, 111 S.Ct. 2009, 2010, 2011, 114 L.Ed.2d 98 (1991) ("we believe that the appellants' primary contention is that the relationship plus continuity test for a pattern of racketeering under RICO is unconstitutionally vague.... Thus *H.J. Inc.* is more pertinent than *Fort Wayne Books* to our discussion."). To the extent that the Third Circuit endorsed a void for vagueness challenge to a test created by the Supreme Court, we disagree.

No precedent supports the proposition that a party may attack a Supreme Court decision as void for vagueness. To do so would, in effect, allow a renewed attack on the constitutional validity of the statute itself under the guise of attacking the judicially created "continuity plus relationship test."

■ First, *H.J. Inc.* itself does not concern the void for vagueness standard as applied to RICO's pattern requirement. The opinion of the Court does not include a void for vagueness analysis. As Justice Scalia pointed out, "[n]o constitutional challenge to this law has been raised in the present case,

2. *See generally* Joseph E. Bauerschmidt, Note, *"Mother of Mercy—Is This The End of Rico?"— Justice Scalia Invites Constitutional Void-for-Vagueness Challenge to RICO "Pattern"*, 65 No-

tre Dame L.Rev. 1106 (1990); David W. Gartenstein & Joseph F. Warganz, Note, *RICO's "Pattern" Requirement: Void For Vagueness?*, 90 Colum.L.Rev. 489 (1990).

and so that issue is not before us." · *H.J. Inc.*, 492 U.S. at 255–56, 109 S.Ct. at 2909.[3]

Second, the idea of subjecting the Supreme Court's statutory interpretation to void for vagueness analysis appears to be without precedent. The reason can best be illustrated by an analogy. What Tatum seeks to accomplish here would be no different from a party, facing a suit under the Sherman Act for engaging in an illegal tying arrangement defending itself by saying, not that the Sherman Act itself is unconstitutionally vague (it is not, *see Nash v. United States*, 229 U.S. 373, 376–78, 33 S.Ct. 780, 781–82, 57 L.Ed. 1232 (1913)), but rather that the Supreme Court's law regarding tying arrangements is unconstitutionally vague. No one will claim that the Sherman Act is a model of specificity. In fact, it makes the pattern requirement of RICO look thoroughly scientific.[4] However, the claims of void for vagueness lodged against it have failed. More importantly, neither is the Court's jurisprudence regarding tying arrangements a paragon of clarity. In fact, the Supreme Court has directly addressed the issue of tying arrangements thirteen times since the passage of the Sherman Act. Nonetheless, its occasionally obtuse teaching on the issue of tying arrangements does not make the underlying statute unconstitutionally vague.

Judge Easterbrook's discussion of similar, though not identical, issues in *K–S Pharmacies, Inc. v. American Home Products Corp.*, 962 F.2d 728 (7th Cir.1992), is instructive. In *K–S Pharmacies*, the court's opinion discussed the sufficiency of a Wisconsin statute forbidding price discrimination with respect to the wholesale price of prescription drugs. It noted that the Wisconsin law was "no less

precise than the Sherman Act, another law providing for treble damages in private actions and criminal punishment in public ones." *Id.* at 732. Similarly, a complaint that *H.J. Inc.* or *Sedima* provide meaningful, possibly even vital, instruction on the issue of what a pattern is, does not mean that the statutory phrase is unconstitutionally vague. "The Sherman Act was not unconstitutional in 1890, becoming enforceable only in 1913 [when the Supreme Court decided *Nash* ]. It has been constitutional all along because it provides a starting place, and courts resolve disputes as they arise." *Ibid.*

■ We are not completely lacking in guidance regarding the constitutional validity of the pattern requirement in the RICO statute. The Supreme Court has addressed the constitutional validity of a state RICO statute's pattern requirement in *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 109 S.Ct. 916, 103 L.Ed.2d 34 (1989). *Fort Wayne Books* is particularly compelling because it represented a facial challenge to the statute. Therefore, the statute effectively had to pass constitutional muster in every circumstance. In *Fort Wayne Books*, the· Supreme Court stated that "[w]e find no merit in petitioner's claim that the Indiana RICO law is unconstitutionally vague as applied to obscenity predicate offenses. Given that the RICO statute totally encompasses the· obscenity law, if the latter is not unconstitutionally vague, the former cannot be vague either."· *Fort Wayne Books*, 489 U.S. at 58, 109 S.Ct. at 925. We believe the same reasoning applies in this case. That the mail and wire fraud statutes are not unconstitutionally vague is beyond dispute. To paraphrase *Fort Wayne Books*, Tatum cannot be found liable for violating

---

3. The majority of the argument offered by Tatum appears to rest on Justice Scalia's concurrence and on further analysis of which justices in *H.J. Inc.* are still on the court. Such arguments are inappropriate. While we understand that changes in Court personnel may alter the outcomes of Supreme Court cases, we do not sit as fortune tellers, attempting to discern the future by reading the tea leaves of Supreme Court alignments. Each case must be reviewed on its merits in light of precedent, not on speculation about what the Supreme Court might or might not do in the future, as a result of personnel shifts.

4. The exact meaning of the phrase contained in 15 U.S.C. § 1: "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal" has been the subject of numerous Supreme Court opinions. 15 U.S.C. § 1. *See also* 15 U.S.C. § 2 ("Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony.").

the RICO statute without a jury finding that he engaged in the mail and wire fraud alleged by Columbia. *Ibid.*

Therefore, several factors militate against a holding of unconstitutional vagueness. First, the statute creates a clear line for culpability. One must commit two of the enumerated predicate offenses within ten years. These so called "predicate acts" are, by themselves, violations of either federal or state law. Similarly, although RICO· has criminal sanctions, this case only deals with civil sanctions, albeit harsh ones. The Supreme Court has held only one civil statute unconstitutionally vague since 1960, *see Giaccio v. Pennsylvania,* 382 U.S. 399, 86 S.Ct. 518, 15 L.Ed.2d 447 (1966). The Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982).

Similarly, RICO is a federal statute, and the Supreme Court seldom voids federal statutes on vagueness grounds. Unlike state statutes, in which a federal court only reviews the state statute and the state court decisions interpreting it, a federal statute is subject to interpretation by the federal courts.[5] The court does not sit passively and review only what other people have said to determine if a statute is vague. Instead, the federal court interprets the statute itself. Therefore, there are few cases in which the Supreme Court has held a federal statute unconstitutionally vague, as the Court's own interpretations are a means of mitigating any vagueness. *See United States v. Cardiff,* 344 U.S. 174, 176–77, 73 S.Ct. 189, 190, 97 L.Ed. 200 (1952) (reversing conviction for violation of Federal Food, Drug, and Cosmetic Act); *A.B. Small Co. v. American Sugar Ref. Co.,* 267 U.S. 233, 239, 45 S.Ct. 295, 297, 69 L.Ed. 589 (1925) (upholding vagueness challenge to civil provisions of Food Control Act); *Weeds, Inc. v. United States,* 255 U.S. 109, 110, 41

S.Ct. 306, 306, 65 L.Ed. 537 (1921) (reversing conviction for conspiracy to violate Food Control Act); *United States v. L. Cohen Grocery Co.,* 255 U.S. 81, 89, 41 S.Ct. 298, 300, 65 L.Ed. 516 (1921) (finding section 4 of Food Control Act void for vagueness).

■ The statute need not define with mathematical precision the conduct forbidden, just as the antitrust laws forbid agreements that "restrain trade," or result in "unfair prices." Instead, to succeed on a claim of unconstitutional vagueness, as the First Circuit has held, the complaining party must do more than show that the statute "requires a person to conform his conduct to an imprecise but comprehensible normative standard." *United States v. Angiulo,* 897 F.2d 1169, 1179 (1st Cir.), *cert. denied,* 498 U.S. 845, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). Instead, the complaining party must prove that "no standard of conduct is specified at all." *Ibid. See A.B. Small Co.,* 267 U.S. at 239, 45 S.Ct. at 297 (what is constitutionally offensive is the "exaction of obedience to a rule or standard which was so vague and indefinite as really to be no rule or standard at all"). But there is a clear standard of conduct initially proscribed by the pattern requirement of RICO. Here the statute clearly has a core; to avoid any possibility of falling under RICO's admittedly broad umbrella, one need only avoid committing an enumerated crime twice within ten years. If one can take the time to avoid committing mail or wire fraud, or extortion, or murder, or any of the other enumerated predicate offenses, all of which are federal or state criminal offenses in their own right, than one can sleep safe in the knowledge that he will not be found to have violated RICO.

■ The issue, bluntly and simply framed, is whether a person of ordinary intelligence would know that committing dozens if not hundreds of acts of wire and mail fraud, over the course of almost a decade against the same victim, might constitute a pattern of racketeering activity. Since, by

---

**5.** *See Winters v. New York,* 333 U.S. 507, 514, 68 S.Ct. 665, 669, 92 L.Ed. 840 (1948) ("[I]nterpretation by [the state court] puts [the construction] in the statute as definitely as if it had been so amended by the legislature."); *United States v.*

*Thirty–Seven Photographs,* 402 U.S. 363, 369, 91 S.Ct. 1400, 1405, 28 L.Ed.2d 822 (1971) (Supreme Court "lack[s]·jurisdiction authoritatively to construe state legislation.").

its terms it only takes a minimum of two acts, it is simply implausible for a party to claim that it was not aware that committing numerous predicate acts would expose it to potential RICO liability. The statute need not be exact, just as price discrimination statutes and antitrust statutes are not exact. The statute must simply put the party on notice that it is entering a potentially forbidden zone.[6]

Therefore, we hold that the phrase "pattern of racketeering activity" is not unconstitutionally vague. We reject the invitation to subject the Supreme Court's "continuity plus relationship" test to a vagueness analysis. There is simply no precedent for such action.

So long as we use words to govern human conduct, there will be gray areas in the law. But parties cannot raise these hypothetical gray areas in an "as applied" challenge. With respect to a vagueness challenge, there is nothing startling from a legal standpoint in the RICO statute. The simple fact is "[t]he law is full of instances when a man's fate depends on his estimating rightly, that is as the jury subsequently estimates it, some matter of degree." *Nash v. United States,* 229 U.S. 373, 377, 33 S.Ct. 780, 781, 57 L.Ed. 1232 (1913). The phrase "pattern of racketeering activity" is broad, but not unconstitutionally vague.

## IV

Whether a district court has correctly dismissed a suit pursuant to Fed. R.Civ.P. 12(b)(6) is a question of law, and therefore subject to de novo review. *Taxpayers United for Assessment Cuts v. Austin,* 994 F.2d 291, 296 (6th Cir.1993); *Allard v. Weitzman (In Re DeLorean Motor Co.),* 991 F.2d 1236, 1239–40 (6th Cir.1993). The district court must construe the complaint in a light most favorable to the plaintiff, accept all of the factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Allard,* 991 F.2d at 1240; *Mayer v. Mylod,* 988

F.2d 635, 638 (6th Cir.1993). When an allegation is capable of more than one inference, it must be construed in the plaintiff's favor. *Allard,* 991 F.2d at 1240; *Mayer,* 988 F.2d at 638. Hence, a judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations. *Allard,* 991 F.2d at 1240; *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir.1990).

However, while liberal, this standard of review does require more than the bare assertion of legal conclusions. *Allard,* 991 F.2d at 1240. "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory.'" *Ibid.* (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir.1988)). *See also Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir.1987) (liberal Rule 12(b)(6) review is not afforded legal conclusions and unwarranted factual inferences); *Ana Leon T. v. Federal Reserve Bank,* 823 F.2d 928, 930 (6th Cir.) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

The fact that a statute passes basic constitutional muster does not mean that the complaint meets the requirements of the statute or the Supreme Court's interpretations of the pattern requirement. Thus, even if the statute itself is not void for vagueness, the complaint may still fail to allege a pattern of racketeering activity in conformity with the statute and Supreme Court precedent. Therefore, we next turn to the substance of the complaint itself to determine whether it sufficiently alleges a pattern of racketeering activity.

As we noted, under Rule 12(b)(6) we accept all of the factual allegations as true. The complaint in question is 76 pages in length, and contains approximately 39 exhibits that run another 261 pages. The exhibits include lists of phone calls and logs of corre-

---

6. Because this case does not involve any First Amendment issues, Tatum "has standing to raise a vagueness challenge only insofar as the statute is vague as applied to his or her specific con-

duct." *Pungitore,* 910 F.2d at 1103. *See New York v. Ferber,* 458 U.S. 747, 767–69, 102 S.Ct. 3348, 3359–61, 73 L.Ed.2d 1113 (1982).

spondence. Columbia alleges that Tatum used both phone calls and letters in its fraud scheme.

The Supreme Court has added flesh to the meaning of pattern in two major cases: *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985); and *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Under *Sedima,* it is the "factor of continuity plus relationship which combines to produce a pattern." *Sedima,* 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14. The Court further examined the issue of "continuity plus relationship" in *H.J. Inc.,* where the Court held that "it is not the number of predicates but the relationship that they bear to each other or to some external organizing principle that renders them 'ordered' or 'arranged.'" *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2900. "Relationship" exists where the conduct in question "embraces criminal acts that have the same or similar purposes, results, participants, victims or methods of commission ... and are not isolated events." *H.J. Inc.,* 492 U.S. at 240, 109 S.Ct. at 2901. "Continuity" is primarily a temporal concept. It refers to a "closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902.

The complaint clearly alleges two predicate acts within a ten-year period. The issue then, is whether the complaint meets the requirements of *Sedima* and *H.J. Inc.,* and this Circuit's holding in prior RICO cases such as *Fleischhauer v. Feltner,* 879 F.2d 1290 (6th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 *and* 494 U.S. 1027, 110 S.Ct. 1473, 108 L.Ed.2d 611 (1990). Clearly it does. The complaint describes conduct that demonstrates both continuity and relationship.

In *Feltner,* this Circuit has adopted what some have characterized as the "multi-factor test" for determining whether a pattern exists in a given case. Specifically, the court held that "[i]n determining whether the predicate acts are sufficiently continuous and related ... [the following facts are relevant]: the number and variety of predicate acts and the length of time over which they were committed, the number of victims, the presence of separate schemes and the occurrence of distinct injuries." *Feltner,* 879 F.2d at 1297 (quoting *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1304 (7th Cir.1987)). *See also Environmental Tectonics v. W.S. Kirkpatrick, Inc.,* 847 F.2d 1052, 1063 (3d Cir.1988), *aff'd on other grounds,* 493 U.S. 400, 110 S.Ct. 701, 107 L.Ed.2d 816 (1990); *Brandenburg v. Seidel,* 859 F.2d 1179, 1185 (4th Cir. 1988). We do not think that either *Sedima* or *H.J. Inc.* worked a significant change in this law. To the contrary, they have buttressed the validity of the multi-factor approach to the determination of whether a pattern exists. *See, e.g., Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14.

Therefore, to state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better). Therefore, at one extreme is a perpetrator committing two predicate acts, in one day, in one scheme, causing a single injury, to a single victim. This is not a pattern. *See Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. At the other extreme, a perpetrator engineering dozens of schemes, and using myriad predicate acts to further each scheme, against numerous victims causing numerous types of injuries, beyond peradventure engages in a pattern of racketeering activity.

The complaint clearly alleges a significant period of activity, albeit closed, of about nine years. Furthermore, the complaint alleges far more than two predicate acts. Indeed, it lists dozens of examples of what Columbia considers to be mail and wire fraud. Similarly, Columbia alleges various kinds of predicate acts, including wire fraud, mail fraud, and travel act fraud. These acts were the foundation for various schemes, including defrauding Columbia of valid leases by failing

to drill, defrauding Columbia of valid leases by capping wells, defrauding Columbia of royalties by misreporting the amount of resources extracted from wells, and defrauding Columbia of leases by supporting, secretly, lawsuits by lessees. Furthermore, each of these schemes and the constituent predicate acts resulted in various injuries, including loss of already existing lease rights, loss of future lease rights, and loss of royalties. Similarly, each of the schemes was allegedly engineered by Tatum through his corporations and therefore have a single perpetrator. The only factor militating against a finding of a pattern is the fact that the number of victims is limited. But there is no per se rule that a weakness in one area is dispositive. Here the limited number of victims is more than balanced by the strength presented in other areas.

Of course, as Tatum stated (vociferously) at oral argument, none of this may be true. In fact, discovery may disclose that the entire story has been concocted from whole cloth, or is a patent exaggeration and does not even remotely resemble a pattern. Or Columbia may be unable to convince a jury that Tatum both committed mail and wire fraud and that these activities also constitute a pattern of racketeering activity. But that is not the standard of review under Rule 12(b)(6). To the contrary, we assume that everything alleged in the complaint is true. As such, the complaint clearly alleges a series of predicate acts that, if proven, would amount to a pattern of racketeering activity.

## V

For the foregoing reasons, the judgment of the district court is **REVERSED.** The matter is **REMANDED** to the district court for further proceedings consistent with this opinion.