John C. GILBERT, et al., Plaintiff,

v.

DOEHLER–JARVIS, INC.,
et al., Defendant.

No. 3:99 CV 7395.

United States District Court,
N.D. Ohio,
Western Division.

March 14, 2001.

Joan Torzewski, Lackey, Nusbaum, Harris, Reny & Torzewski, Toledo, OH, Roger J. McClow, Ellen F. Moss, Klimist, McKnight, Sale, McClow & Canzano, Southfield, MI, for John C Gilbert, Eugene Appling, Robert A Laclair, John E Malkuian, Christiane J Myers, Jenneth McKnight, Thomas F Kalejta, Fern M Yerger, plaintiffs.

Michael S. Scalzo, Sr., Marshall & Melhorn, Toledo, OH, Jeffrey Cooper, Philadelphia, PA, Allan M. Dabrow, Steven R. Williams, Stanley Weinberg, Mesirou, Gelman, Jaffe, Kramer & Jamieson, Philadelphia, PA, for Doehler–Jarvis Inc., Doehler–Jarvis Toledo, Inc., Doehler–Jarvis Pottstown, Inc., Harvard Industries, Inc., defendants.

## MEMORANDUM OPINION

KATZ, District Judge.

This matter is before the Court on the parties' briefs on the issue of whether the Employee Retirement and Insurance Security Act (ERISA), 29 U.S.C. §§ 1001 et seq., precludes recovery for compensatory damages.[1]

### BACKGROUND

Plaintiffs are retired employees or surviving spouses of retired employees (collectively, "the Retirees") of the Defendant companies (collectively, "the Company"), who received health care benefits pursuant to the terms of a Collective Bargaining Agreement ("CBA") between the parties. On June 10, 1999, the Company notified the Retirees that their health care benefits would be terminated effective October 31, 1999, upon the termination of the CBA. The Retirees brought suit in this Court to prevent the Company from terminating their health care benefits.

Twenty days before the October 31, 1999 termination date the Company agreed to continue providing health care benefits un-

til January 31, 2000. In December 1999, the Company agreed to provide benefits for an additional six weeks, until March 15, 2000. On March 6, 2000, nine days before the benefits were to be terminated, this Court entered judgment as a matter of law in the Retirees' favor.

Believing that their health benefits were going to be terminated and concerned about a lapse in insurance coverage, some Retirees had purchased replacement insurance at their own expense. The Retirees claim that they are entitled to recover their out-of-pocket expenses for this replacement insurance coverage. They argue that such damages are not precluded in this action because the action is based not only on ERISA but also on Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. The Company contends that the Retirees are not entitled to recover their expenses in obtaining replacement insurance coverage because extracontractual damages are not available in a hybrid ERISA/Section 301 action.

### DISCUSSION

The issue before the Court is whether ERISA prevents the Retirees from recovering the amounts they spent on replacement insurance when they believed that their benefits were going to be terminated, despite the fact that the benefit plan was never terminated.

Under ERISA, a benefit plan participant can bring a civil action "to recover

1. On March 6, 2000, this Court entered judgment as a matter of law in the Retirees' favor. The Court determined that the health care benefits at issue were lifetime benefits under the CBA and thus, the Company was not entitled to terminate those benefits. The parties then, at the Court's direction, submitted briefs on the issue of the Retirees' damages. On December 5, 2000, the Court entered judgment on the issue of the Retirees' damages. However, the Court chose to defer ruling on whether the Retirees could recover

compensatory damages. Although neither party had raised the issue in their briefs, the Court expressed concern that ERISA might preclude the Retirees from recovering compensatory damages. Based on that concern, the Court directed the parties to brief the issue of whether ERISA precluded the Retirees from recovering the insurance premiums they paid for replacement insurance purchased in anticipation of a termination of their benefits.

benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). ERISA is designed to preempt any and all state laws relating to employee benefit plans and establish such plans as exclusively a federal concern. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 44, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1987).

■ Within its provisions, ERISA establishes a set of civil enforcement remedies available to a claimant. *See* 29 U.S.C. § 1132(a)(3). The remedies provided for in ERISA do not expressly allow for the recovery of compensatory damages. *See id.* Moreover, the Sixth Circuit has held that extracontractual compensatory damages are not recoverable in ERISA actions. *UAW Local 91 v. Park–Ohio Industries, Inc.,* 876 F.2d 894, 1989 WL 63871 (6th Cir.1989) (unpublished opinion); *accord Medina v. Anthem Life Ins. Co.,* 983 F.2d 29 (5th Cir.1993); *Harsch v. Eisenberg,* 956 F.2d 651 (7th Cir.1992); *Lafoy v. HMO Colorado,* 988 F.2d 97 (10th Cir.1993); *McRae v. Seafarers' Welfare Plan,* 920 F.2d 819 (11th Cir.1991). Thus, had the Retirees' action been based solely on ERISA, they would have been precluded from recovering extracontractual compensatory damages.

However, the Retirees argue that because their action is based on Section 301 of the LMRA as well as ERISA, they are not precluded from recovering compensatory damages. The Retirees argue that because Section 301 allows for the recovery of compensatory damages, such damages are available in a hybrid ERISA/Section 301 action. The Court disagrees.

In enacting ERISA, Congress intended to establish a comprehensive statutory scheme that governed employee benefit plans. Congress included in that comprehensive scheme the remedial measures that it felt were appropriate to remedy violations of ERISA. The Supreme Court has found that "the six carefully integrated civil enforcement provisions found in § 502(a) of the statute ... provide strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). Moreover, in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52, 107 S.Ct. 1549, 1555, 95 L.Ed.2d 39 (1987), the Supreme Court concluded that § 502(a) of ERISA was intended to be exclusive. The Supreme Court based this conclusion on the language and structure of the civil enforcement provisions and the legislative history behind ERISA. *Id.* Although the Supreme Court's conclusion in *Pilot Life* was directed at whether ERISA preempted state law remedies, the Court believes it is instructive on the present issue.

■ The Retirees brought this hybrid ERISA/Section 301 action to establish their rights to lifetime health care benefits under the CBA and to prevent the Company from terminating those benefits. Under both the ERISA claim and the Section 301 claim, the Retirees seek to recover compensatory damages for the replacement insurance they purchased in anticipation of the termination of their benefits. However, to allow the Retirees to recover under Section 301 what they would be unable to recover under ERISA would frustrate the intent of ERISA.

■ ERISA is a comprehensive statutory scheme that governs the area of employee benefit plans. Included within ERISA are the means by which an employee can establish his rights under an employee benefit plan should a problem arise. *See* 29 U.S.C. § 1132(a)(3). The enforcement remedies contemplated by ERISA are equitable in nature. ERISA

provides that a benefit plan participant can bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief...." 29 U.S.C. § 1132(a)(3).

The plain language of ERISA does not provide for the recovery of compensatory damages. Indeed, Congress's express inclusion of the phrase "other appropriate equitable relief" implies that Congress did not intend legal relief, such as compensatory damages, to be available under ERISA. *See Medina v. Anthem Life Ins. Co.*, 983 F.2d 29, 31 (5th Cir.1993) (declining to recognize extracontractual damages when Congress had ample opportunity in the two decades since enacting ERISA to develop such a remedy if it so desired); *Harsch v. Eisenberg*, 956 F.2d 651, 656 (7th Cir.1992) (declining to allow extracontractual damages and expressing reluctance to tamper with an enforcement scheme crafted with such care as that of ERISA).

Therefore, to allow the recovery of extracontractual damages simply because the action is based on Section 301 as well as ERISA would contravene Congress's intent. In creating the equitable remedies available under ERISA, Congress established the method by which employees could enforce their rights under an employee benefit plan. The Court agrees with the District Court of Kansas that to allow extracontractual damages under Section 301 for actions based on an employee benefit plan "would constitute an inappropriate 'backdoor' means to an end which ERISA does not allow." *Ragan v. Navistar Int'l Transp. Corp.*, 1989 WL 117486 (D.Kan. Sept.20, 1989).

The Retirees brought this action to establish that their health care benefits were lifetime benefits and thus could not be terminated by the Company. The Retirees' action is, at its heart, an ERISA ac-

tion. The fact that they chose to bring their action under Section 301 as well as ERISA does not allow them to recover extracontractual damages that would not be available to them under ERISA.

CONCLUSION

For the foregoing reasons, Defendants are not liable for the extracontractual damages incurred by Plaintiffs when they purchased alternate insurance in anticipation of the termination of their benefits.

IT IS SO ORDERED.