Isaac ROSE, et al., Plaintiffs

v.

VOLVO CONSTRUCTION EQUIP-
MENT NORTH AMERICA,
INC., Defendant

No. 1:05CV168.

United States District Court,
N.D. Ohio, Eastern Division.

Aug. 18, 2005.

Andrea L. Whitaker, Bryan P. O'Connor, Joyce Goldstein, Emily A. Tidball, Goldstein & O'Connor, Cleveland, OH, for Plaintiffs.

Fred Seleman, Patricia A. Shlonsky, Thomas H. Barnard, Jr., Yelena Boxer, Britt J. Rossiter, Ulmer & Berne, Cleveland, OH, for Defendant.

## ORDER

OLIVER, District Judge.

Plaintiffs Isaac Rose, Peggy Knox, Joseph Henderson, Wilbert Whitt, Opal Whitt, Andrew Bergant, Jr., A.C. Wade, and Metro Burtyk (together, "Class Representatives"), along with International Union, and the United Automobile, Aerospace, and Agricultural Implement Workers of America ( "UAW") (all together "Plaintiffs") filed the above captioned action against Defendant Volvo Construction Equipment North America, Inc. ("VCENA" or "Defendant") on February 1, 2005, alleging that VCENA breached the Collective Bargaining Agreement and violated an ERISA plan. The complaint also included class action claims, with the Class Representatives acting on behalf of all similarly situated Class Members. VCENA subsequently filed third party complaints against Euclid Hitachi Heavy Equipment and Hitachi Construction Machinery.

Now pending before the court is Defendant's Motion to Dismiss the Plaintiffs' Second Amended Complaint (ECF No. 47). For the reasons stated below, the Motion to Dismiss is denied.

## I.  FACTS

The facts as alleged in the complaint are as follows:

Plaintiffs are a group of retirees from a plant in Euclid, Ohio ("Euclid Facility"), as well as their spouses, dependants, and surviving spouses. Plaintiffs' rights to health insurance benefits are governed by a series of collective bargaining agreements ("CBAs") negotiated between the UAW and the various owners of the Euclid Facility. In 1983, the UAW negotiated a three year CBA with Euclid, Inc., entitling the Class Representatives to vested lifetime health care and life insurance benefits. In 1984, VCENA purchased Euclid, Inc., and specifically agreed to assume all liabilities under the employee benefit plan. The UAW negotiated subsequent CBAs with VCENA, each of which required VCENA to provide vested lifetime retiree health care and life insurance benefits.

In 1994, VCENA formed a joint venture with Hitachi Construction Machinery, Inc. ("HCM") to operate the Euclid Facility. The new venture was called Euclid–Hitachi Heavy Equipment, Inc. ("EHHE"). By the end of 2000, VCENA had transferred all its interest in EHHE to HCM, and EHHE was a wholly owned subsidiary of HCM. In 2004, EHHE changed its name to Hitachi Construction Truck Manufacturing, Ltd. ("HCTM").

In January, 2005, the Class Representatives received a letter from HCTM informing them that their retiree life and health benefits would be cancelled as of February 28, 2005. The letter stated that HCTM would provide reduced benefits if the Class Representatives and Class Members

signed a participation agreement releasing various parties, including VCENA, from claims against them.

When informed that HCTM was cancelling post-retirement health care benefits, VCENA asserted that the various Hitachi entities assumed all VCENA liabilities and agreed to indemnify VCENA. VCENA thus denied that it had any responsibility or obligation to fund the health care benefits.

After extensive negotiations, EHHE, HCM, and the UAW reached a compromise settlement which was recorded in the Retiree Benefit Agreement ("RBA"). Under the RBA's terms, EHHE and HCM would continue to provide benefits through March 31, 2005. After that date, EHHE and HCM would have no further obligation to provide any benefits. In exchange, EHHE and HCM would fund a Voluntary Employees' Beneficiary Association ("VEBA") Trust, which would subsequently manage and administer the health benefits plan. EHHE and HCM funded the VEBA Trust with $7,653,066.81, the same amount EHHE and HCM had originally planned to contribute to provide Class Representatives and Class Members reduced benefits under the terms of the January, 2005 cancellation letter.

The parties to the RBA did not intend or expect the funds in the VEBA would cover the lifetime benefits guaranteed under the CBA. An actuarial study conducted by EHHE indicated the full range of benefits would cost between $17.6 million and $24 million to cover the Class Representatives and Members. The expenses paid on Plaintiffs' behalf for each of the past five years ranged from $1.2 million to $1.4 million.

Additionally, the RBA did not specify the level of benefits the VEBA Trust would be obligated to provide. The VEBA trustees set the benefit level, and have the right to reduce or modify benefits at any time. The initial VEBA trustees have already eliminated one of the benefits that had been provided to participants. Under its own terms, the VEBA Trust will expire on April 30, 2006.

The Plaintiffs are currently receiving health care benefits, paid for and administrated by the VEBA Trust. Defendant has moved to dismiss the case, arguing that Plaintiffs' claims are not ripe for adjudication because they have not pled any facts showing actual damage.

## II. LAW AND ANALYSIS

### A. Dismissal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows the court to determine the legal sufficiency of a plaintiff's claims. *See Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993). Courts reviewing a 12(b)(6) motion must accept the well-pled factual allegations of the complaint as true and construe all reasonable inferences in favor of the plaintiff. *See Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995). However, the court is not required to accept conclusions of law or unwarranted inferences of fact cast in the form of factual allegations. *Blackburn v. Fisk University,* 443 F.2d 121, 123 (6th Cir.1971). Accordingly, a court must determine "whether the plaintiff undoubtedly can prove no set of facts in support of [his] claim that would entitle [him] to relief" under a viable legal theory advanced in the complaint. *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995), *cert. denied,* 516 U.S. 1158, 116 S.Ct. 1041, 134 L.Ed.2d 189 (1996).

### B. Ripeness

Defendant contends that this case must be dismissed because it does not present a case or controversy ripe for adjudication. Pursuant to the Constitution's Article III requirement that federal courts

hear only "cases or controversies," federal courts may not engage in the "premature adjudication" of a dispute. U.S. Const., Art. III; *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). A dispute is unripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agricultural Products Co.,* 473 U.S. 568, 580, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). The existence of a threatened or actual injury is generally required before an issue is ripe. *See Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). However, " '[o]ne does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.' " *Babbitt v. United Farm Workers,* 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) (quoting *Pennsylvania v. West Virginia,* 262 U.S. 553, 593, 43 S.Ct. 658, 67 L.Ed. 1117 (1923)).

■ Courts weigh three factors in evaluating a case's ripeness: (1) "the likelihood that the harm alleged by plaintiffs will ever come to pass;" (2) "whether the factual record of this case is sufficiently developed to produce a fair and complete hearing as to the prospective claims;" and (3) "the hardship that refusing to consider plaintiff's prospective claims would impose upon the parties." *United Steelworkers of America, Local 2116 v. Cyclops Corp.,* 860 F.2d 189, 194–95 (6th Cir.1988).

### 1. Likelihood Harm Will Come to Pass [1]

Plaintiffs have stated sufficient facts to show a high likelihood harm will come to pass in the near future. Under the facts as alleged by the Plaintiffs, the VEBA Trust funds are insufficient to cover the full level of Plaintiffs' health benefits for more than five or six years. Thus, the harm alleged by Plaintiffs is no abstract possibility, but a concrete probability.

These circumstances are not like the facts under which courts have dismissed cases for lack of ripeness. In *Cyclops,* the plaintiffs were former employees of a manufacturer (Cyclops) that had transferred its operations and pension obligations to another entity, New Boston. New Boston subsequently filed for bankruptcy. 860 F.2d at 191. The plaintiffs sued Cyclops, claiming Cyclops breached the CBA by transferring the obligation to pay their pension to a bankrupt entity, and asked for a ruling that Cyclops would be liable for any future defaults by New Boston. *Id.* In affirming the district court's grant of summary judgment, the Sixth Circuit found that since New Boston was paying pension benefits and "it is far from clear that New Boston will ever fail to meet its pension obligations," the case was not ripe. *Id.* at 195. The court also found persuasive that if New Boston ever did default, the Pension Benefit Guaranty Corporation would pay the applicable benefits. *Id.* The instant case is different in two critical ways. First, neither the original (VCENA) nor successor entities (EHHE and HCM) are

---

**1.** Plaintiffs contend they have already suffered actual harm through a reduction in benefits. Such actual injury would obviate the need for a full ripeness analysis, since an actual, current injury would be ripe for adjudication. Defendants counter that the reduction in benefits has not been pled with sufficient detail to establish actual harm. In their complaint, the Plaintiffs contend that the VEBA trustees have eliminated one of the benefits the health plan had previously provided, but provide no

further detail. The court concludes that although Plaintiffs' assertion about the benefit cut may be somewhat vague and without great detail, for the purposes of a motion to dismiss, they have stated sufficient facts to demonstrate that their benefits have been reduced and they have suffered an injury. However, the court will still proceed to analyze whether there is a likelihood that the future harm alleged by Plaintiffs will come to pass.

currently providing benefits; rather, the VEBA Trust is providing benefits. Thus, the successor entities are not now paying Plaintiffs' benefits, as they were in *Cyclops*. EHHE and HCM have no further obligation to pay benefits; the only party arguably responsible is VCENA. Second and more importantly, the threat of benefits running out is not "far from clear" but "certainly impending;" at $1.2—$1.4 million per year, the $7.6 million in the VEBA Trust will last six years at the most. For these reasons, *Cyclops* is inapposite, as are the other similar cases cited by Defendant. *See Bolton v. Actuant Corporation*, 2004 WL 1136551 (C.D.Cal. March 9, 2004) (granting, for lack of ripeness, a motion to dismiss declaratory judgment action by plaintiffs seeking to hold original employer liable for pension obligations of a bankrupt successor entity because no allegation that bankrupt successor entity had stopped or would stop paying benefits); *Systems Council EM–3, IBEW v. AT&T*, 159 F.3d 1376 (D.C.Cir.1998)(affirming dismissal of suit challenging allocation of pension and welfare benefits between AT & T and its Lucent spinoff because no allegation made that Lucent had been unable or unwilling to provide benefits).

Nor is this case similar to *Petro v. Flintkote Company*, 633 F.Supp. 10 (N.D.Ohio 1986). In *Petro*, an employer terminated its retiree health benefits, but reinstated them after the employees brought suit. The defendant employer expressed a clear intent to continue providing benefits, and the court dismissed the case on mootness grounds, finding that "once defendant discontinued the violation by reinstating benefits, plaintiffs were no longer adversely affected." *Id.* at 12. In this case, EHHE and HCM have expressed no "clear intent" to continue providing benefits; rather, they funded the VEBA Trust and washed their hands of any future obligations. The VEBA trust is providing a reduced level of benefits and will not provide benefits be-

yond six years. There is a direct injury now, and a sufficiently high threat of a future injury to establish a ripe case or controversy.

In situations where there is a specific and probable future threat to benefits, courts have retained jurisdiction over lawsuits filed prior to benefits termination. In *Gilbert v. Doehler–Jarvis, Inc.*, the defendant company notified its retirees that it was terminating their benefits on October 31, 1999. 137 F.Supp.2d 916 (N.D.Ohio 2001). The plaintiff retirees filed suit, and the court retained jurisdiction, even though the company agreed to extend benefits through March 15, 2000. The court ultimately entered summary judgment in the plaintiffs' favor on March 6, 2000—before the benefits were terminated. *Id.* at 917. While there was no specific ripeness challenge raised in *Gilbert*, the court retained jurisdiction where the threat was not current, but in the immediate future.

On the basis of these cases, the court finds that to the extent Plaintiffs have not yet been harmed, they have shown a sufficient likelihood of a threatened future injury.

*2. Factual Record*

■ The second factor in a ripeness analysis is whether the factual record is sufficiently developed to produce a fair and complete hearing. This consideration stems from the fact that

there are situations where, even though an allegedly injurious event is certain to occur, the Court may delay resolution of constitutional questions until a time closer to the actual occurrence of the disputed event, when a better factual record might be available.

*Cyclops*, 860 F.2d at 195 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 42 L.Ed.2d 320

(1974)). In *Cyclops*, the Sixth Circuit noted that even if there were to be a default on pension payments, it was unclear how substantial the default would be and how much would be picked up by the Pension Benefit Guarantee Corporation. *Id.* In the instant case, however, the court finds that the factual record is capable of being developed sufficiently to hold a hearing. The amount of money in the VEBA trust is finite and defined, and there is an actuarial study estimating the total lifetime costs of the plan. If VCENA remains liable for Plaintiffs' benefits, there is no need to wait until the VEBA Trust runs out to estimate the scope and amount of VCENA's liability. Although the exact liability may not be determinable at this point, the court does find that there are fewer unknown facts in the instant case than there were in *Cyclops*.

### 3. Hardship Imposed

■ The final factor in a ripeness determination is "the hardship that refusing to consider plaintiff's prospective claims would impose upon the parties." *Cyclops*, 860 F.2d at 195. In *Cyclops*, the plaintiffs argued that if it knew Cyclops would be held liable in the event of default, the plaintiffs would "take further action against Cyclops to insure that it is maintaining adequate funds to meet this potential liability." *Id.* at 196. The court rejected the plaintiffs' contention because there was no contractual right that would permit the plaintiffs to take any further action against Cyclops, and thus, the refusal to hear plaintiffs' claims would not be prejudicial. *Id.* In the current case, the court finds there would be hardship imposed on Plaintiffs if the court dismisses the current case. Plaintiffs suggest that the VEBA trust was established with the assumption that the court would determine VCENA's liability. If the court dismisses the case, and VCENA's liability is uncertain, the VEBA Trustees may reduce benefit and coverage levels to make the existing funds last longer in the face of this uncertainty. The court does not have to await such action before it finds that the Plaintiffs have been injured. The Plaintiffs do not seek a judgment against VCENA so that they can take some unavailable future action against VCENA in the event of a default, as in *Cyclops*; rather, they seek a judgment so they can structure their benefit plan now to ensure the most comprehensive health benefit coverage over a maximum number of years. Thus, the court finds there would be some hardship imposed on Plaintiffs by refusing to consider the prospective claims; the court has not been made aware of any such hardship on Defendant.

### III. CONCLUSION

After weighing the three ripeness factors, the court concludes that Plaintiffs' dispute is ripe for adjudication. Plaintiffs have suffered an injury—at least one health benefit has been cut. Plaintiffs are likely to suffer a future injury—the VEBA Trust funds will expire in a concrete period of time. There is a sufficient factual record based on the finite funding level in the VEBA Trust. There is no reason for the court to require Plaintiffs to await future events as a condition of pursuing their claims. The record before the court demonstrates that the case is ripe for adjudication. Accordingly, Defendant VCENA's Motion to Dismiss (ECF No. 47) is denied.

IT IS SO ORDERED.