Raymond ZIELINSKI, Nathalie Zielinski, Raymond Held, Dorothy Held, Robert Ballenger, Viola Ballenger, Peter Ciurro, and Laverne Ciurro, individually and as a class of persons similarly situated, Plaintiffs,

v.

PABST BREWING COMPANY, INC., a Delaware Corporation, Defendant.

No. 04–C–0385.

United States District Court,
E.D. Wisconsin.

Feb. 24, 2005.

Daniel W Sherrick/William A Wertheimer, Jr., International Union—UAW, Detroit, MI, for Representing Plaintiffs.

Scott C. Baumbach, Michael Best & Friedrich LLP, Waukesha, WI, Paul E Benson/Charles P Stevens, Michael Best & Friedrich LLP, Milwaukee, WI, for Representing Pabst Brewing Co Inc., Defendant.

## DECISION AND ORDER

RANDA, Chief Judge.

When the Jos. Schlitz Brewing Company ("Schlitz") closed its Milwaukee, Wisconsin plant in 1981, it reached agreements with its retired workers to provide, among other things, health care benefits, including a prescription drug program. Schlitz was later bought by Stroh Brewing Company ("Stroh"), which in turn was bought, in 1995, by Pabst. From 1981 through the end of 2003, the plaintiffs, the group of retirees who benefitted from the 1981 agreement with Schlitz ("Schlitz retirees" or "retirees"), received the same level of health care benefits with no material changes in the way the plan was administered. That changed in 2004 when Pabst, in an effort to minimize the expense of rising health care costs, altered the benefits that the Schlitz retirees receive and the way certain plan provisions are interpreted.

The Schlitz retirees allege that Pabst, as Schlitz's successor, has breached the 1981 contracts between Schlitz and its retirees. Consequently, the retirees have brought suit under § 502(e) and (f) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(e) & (f), and § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). They seek injunctive relief, requiring Pabst to continue providing coverage at the level the retirees have received since 1981. They also seek money damages for costs they have incurred and for mental distress and anguish they have suffered as a result of Pabst's alleged breach.

Both parties have moved for summary judgment and there are a number of issues now before the Court. The Schlitz retirees have asked for summary judgment as to liability. They ask the Court to find that Pabst has breached the 1981 contracts and to grant a permanent injunction to enforce the terms of those contracts. Pabst, too, asks the Court for summary judgment on the grounds that the Schlitz retirees have failed to exhaust their administrative remedies. Alternatively, Pabst requests partial summary judgment on the grounds that the Schlitz retirees cannot recover damages for premiums the Schlitz retirees paid to obtain replacement insurance, nor can they recover damages for mental distress and anguish.

## I. SUMMARY JUDGMENT STANDARD

The summary judgment standard is a familiar one. The Court will grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "material fact" is one that, under the relevant substantive law, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" of material fact exists if a reasonable juror could find that the evidence supports a verdict for the nonmoving party. *Id.*

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex*

*Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. When considering the movant's case, the Court should take all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Hall v. Bennett,* 379 F.3d 462, 464 (7th Cir.2004) ("But of course on summary judgment we resolve these factual disputes and inferences in favor of … the nonmoving party."). If the movant meets his burden, the nonmovant may not rest on the pleadings, but must come forward with evidence that there is a genuine issue for trial that would support a reasonable jury verdict. Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Celotex Corp.,* 477 U.S. at 322–24, 106 S.Ct. 2548.

## I. BACKGROUND

### A. Evidentiary Matters

█ As an initial matter, there is dispute about the authenticity of certain documents that inform the Court's recitation of facts. *See Scott v. Edinburg,* 346 F.3d 752, 759–60 & 760 n. 7 (7th Cir.2003) (noting that, just like at trial, unauthenticated documents may not be considered on summary judgment). Federal Rule of Evidence 901 says that a document is authenticated when there is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901. Responding to the retirees' proposed findings of fact, Pabst denied nearly everything on the grounds that it has not had a chance to conduct discovery and to authenticate the documents that the Schlitz retirees proffer as the relevant contract documents. The Schlitz retirees, on the other hand, contend that all of the necessary documents have been authenticated properly by Patricia Demski

("Desmki"), an employee of the union that has represented the retirees in all dealings relevant to this case, Brewery Workers Local Union No. 9 ("Local 9"). Both sides sweep too broadly in their arguments. Demski's affidavit authenticates some of the exhibits in their entirety, portions of others, and the remaining cannot be challenged by Pabst.

The documents in question include: (1) a collective bargaining agreement ("CBA") between a number of Milwaukee, Wisconsin breweries (including both Pabst and Schlitz) and Local 9 on behalf of the employees at those Milwaukee breweries; (2) a CBA between Schlitz and Local 9 on behalf of Schlitz's Merchandising Men and Servicemen; (3) a 1978 Schlitz Employee Benefits book; (4) a November 6, 1981, Schlitz shutdown agreement between Schlitz and Local 9 on behalf of the Schlitz production employees; and (5) a December 23, 1981, Schlitz shutdown agreement between Schlitz and Local 9 on behalf of the Schlitz Merchandising Men and Servicemen. Demski swears in her affidavit that "[t]he complaint accurately quotes from the 1981 Schlitz labor agreements and Schlitz Employee Benefits book [and] Exhibits A and B are copies of the Schlitz shutdown agreements." (Desmki Aff. ¶ 6.) The Court will address each document in turn.

█ The first document, a CBA between several Milwaukee breweries (including Pabst and Schlitz) and Local 9, cannot be challenged by Pabst because it is a signatory to that document, as is Local 9. The Court accepts that both parties' signatures on that document provide sufficient evidence for purposes of this litigation that that document is what the Schlitz retirees say it is. Consequently, the Court may properly consider that CBA in its entirety.

The second document, a CBA between Schlitz and Local 9 on behalf of Schlitz's Merchandising Men and Servicemen, has been authenticated in part. Demski's affidavit says only that the complaint accurately quotes from this document. Thus, only the language in the complaint has been authenticated under Federal Rule of Evidence 901 and may be considered by this Court.

The third document, a 1978 Schlitz Employee Benefits book, like the second document, has been authenticated only in part. Again, Demski's affidavit says only that the language quoted in the complaint is accurate. Therefore, the Court will consider as evidence only the language from this book that is quoted in the complaint.

■ The fourth document, a November 6, 1981, Schlitz shutdown agreement between Schlitz and Local 9 on behalf of the Schlitz production employees, has been authenticated in full. Demski swears that Exhibit A attached to the First Amended Complaint (and incorporated into the Second Amended Complaint) is a copy of that agreement. When a witness with personal knowledge swears that the document is what she says it is, the authenticity requirement is met. *See* Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 901.03[2] (2d ed.2004) (collecting cases). The entire agreement, then, may be considered as evidence by the Court.

Likewise, the fifth document, a December 23, 1981 Schlitz shutdown agreement between Schlitz and Local 9 on behalf of the Schlitz Merchandising Men and Servicemen, has been authenticated in full. Demski swears that Exhibit B attached to the First Amended Complaint (and incorporated into the Second Amended Complaint) is a copy of that agreement. It, too, may be considered in its entirety as evidence.[1]

Evidentiary matters aside, the Court turns its attention to the facts.

## B. Facts

In 1981, Schlitz closed its Milwaukee plant. (Plaintiff's Proposed Finding of Fact ("PFF") ¶ 1.) In conjunction with that closing, Schlitz entered into two shutdown agreements: one with its production employees and one with its Merchandising Men and Servicemen. (PFF ¶¶ 2–4, 13.) Both agreements provide health benefits, including a prescription drug program, to covered retirees and their spouses and dependents. (PFF ¶¶ 9–10, 18–19; First Am. Compl. Ex. A at 1–2; First Amend. Compl. Ex. B at 1.) The details of those agreements, substantively identical, will be visited shortly.

Not long after Schlitz shut down its Milwaukee operations, it was purchased by

---

1. The Schlitz retirees protest that Pabst admitted in its first answer that the documents are authentic; thus, even Pabst provided evidence of authenticity. Though earlier versions of a party's pleadings may serve as evidence of the facts therein, they are not binding. *188 LLC v. Trininty Indus., Inc.,* 300 F.3d 730, 736 (7th Cir.2002). Moreover, typically when a party seeks to use something as evidence and it is objected to, he must offer a theory under which the evidence may be admitted. Pabst has objected to the use of its earlier answer as evidence. But *188 LLC,* which the retirees use to argue that the evidence should be considered, is not an evidentiary theory; it is a case that says evidence may be admitted under certain circumstances. The Schlitz retirees have done nothing more than tell the Court that it *may* use the answer as evidence. They have not offered a theory of evidence under which the Court may admit the evidence. When the retirees amended their complaint, Pabst was entitled to amend its answer without being bound by its earlier answer. While the Court may consider the previous answer as evidence of the documents' authenticity, it will not.

Stroh. As part of that acquisition, Stroh became responsible for administering the health benefits of the Schlitz retirees. Stroh continued to administer those benefits until 1999, when Pabst acquired certain assets and liabilities of Stroh. As part of that transaction, Pabst became the new plan administrator for the Schlitz retirees health benefits plan. (PFF ¶¶ 27, 30.)

The plan that Pabst inherited is a series of related documents describing the benefits to which the Schlitz retirees are entitled. That series begins with the two 1981 Schlitz shutdown agreements: one pertaining to the production employees and the other pertaining to the Merchandising Men and Servicemen (though both are substantively identical for purposes of this litigation).

The shutdown agreement pertaining to production employees provides the following benefits for retirees whose effective retirement date is on or before August 1, 1981:[2] "[Schlitz] shall continue to provide the health and welfare benefits for retirees described in Article VII of the terminated labor agreement dated June 1, 1979 to June 1, 1980." (First Am. Compl. Ex. A at 1.) The terminated labor agreement dated June 1, 1979, to June 1, 1980, to which the shutdown agreement refers is a CBA signed by several Milwaukee brewing companies, including Schlitz and Pabst, and Local 9. (Affidavit of Charles P. Stevens ("Stevens Aff.") Ex. B Part 3 at 71.) Article VII of that CBA (the portion incorporated into Schlitz's shutdown agreement) describes the health and welfare benefits for retirees in some length.

    1. The Employers, at their sole cost and expense, shall provide the following insurance coverage to the employees in the bargaining unit, their dependents . . . and also to retired employees and their dependents, in standard Blue Cross and Blue Shield participation contracts which shall contain a coordination of benefits clause, subject to the conditions specified below:

.    .    .    .    .

5. FOR RETIRED EMPLOYEES AND DEPENDENTS:

  (a) Employees in retired status and their dependent spouse [sic] who are enrolled in government Medicare Plans A and B shall be provided Blue Cross and Blue Shield Medicare Extended coverage. Effective June 1, 1974, the Blue Cross–Blue Shield Prescription Drug Program ($2.00 deductible per prescription) as described in Bulletin S462a, shall be added, provided however, that such coverage shall be offset by the amount of any similar benefit for which such person may become eligible as a result of any future hospital-surgical legislation.

  (b) In addition to the present riders now in effect for a retiree and/or his dependent not eligible for government Medicare Plans A and B and any retiree on June 1, 1967 or his dependent who is not on that date enrolled in Medicare Plan B, the coverage will be the same as for Employees and Dependents [as described elsewhere in the labor agreement].

  (c) Those retirees on total and permanent disability retirement currently not covered by Major Medical will be covered until they reach age 65.

  (d) The coverage described in subsections (a), (b), and (c) shall continue for the covered dependents of a deceased retired employee to the end of the sixth month following the month in which death occurs.

---

**2.** With an exception not germane to this action, the same benefits were received by retirees whose effective retirement date was the first of September, October, November, or December 1981, or the first of January 1982. (First Am. Compl. at 2.)

(Stevens Aff. Ex. B Part 1 at 17 & Part 2 at 21–22.)[3] As stated in 5(a) above, the prescription drug program is the Blue Cross–Blue Shield Prescription Drug Program described in Bulletin S462a. Neither party has found Bulletin S462a yet.

The same problem arises with respect to the shutdown agreement pertaining to the Merchandising Men and Servicemen. That shutdown agreement provides: "[Schlitz] shall continue to provide health and welfare benefits for retirees described in Article VI of the terminated labor agreement dated January 1, 1980 to December 31, 1981, for any employee whose effective retirement date is on or before January 1, 1982." (First Am. Compl. Ex. B at 1.) In turn, Article VI of the terminated labor agreement states:

*For Retired Employees and Dependants*

(a) Employees in retired status and their dependent spouse [sic] who are enrolled in government Medicare Plans A and B shall be provided Blue Cross and Blue Shield Medicare Extended coverage. Effective June 1, 1974, the Blue Cross–Blue Shield Prescription Drug Program ($2.00 deductible per prescription) as described in Bulletin S462a, shall be added, provided however, that such coverage shall be offset by the amount of any similar benefit for which such person

may become eligible as a result of any future hospital-surgical legislation.

(b) In addition to the present riders now in effect for a retiree and/or his dependent not eligible for government Medicare Plans A and B and any retiree on June 1, 1967 or his dependent who is not on that date enrolled in Medicare Plan B, the coverage will be the same as for Employees and Dependents.

(c) Those retirees on total and permanent disability retirement currently not covered by Major Medical will be covered until they reach age 65.

(d) The coverage described in subsections (a), (b) and (c) shall continue for the covered dependents of a deceased retired employee to the end of the sixth month following the month in which death occurs.

(PFF ¶ 21.)[4] Again, Bulletin S462a, which describes the Blue Cross–Blue Shield Prescription Drug Program, is currently unaccounted for.

Instead of filling in the puzzle with its final piece—Bulletin S462a—the Schlitz retirees direct the Court's attention to passages from a 1978 Schlitz Employee Benefits book ("1978 Schlitz benefits book") apparently in effect at Schlitz when the shutdown occurred. (PFF ¶¶ 24–25.) A section of the book entitled "Prescription Drug Program" describes the program in considerable detail. (*Id.* ¶ 24.)[5]

---

**3.** Pabst responds to this language in the Schlitz retirees proposed findings of fact by denying it because, Pabst says, it cannot authenticate the document or determine its accuracy. This position is inexplicable in light of the fact that the language comes from a CBA signed by Local 9 and the brewing companies in Milwaukee, including Pabst. (Stevens Aff. Ex. B Part 3 at 71.)

**4.** The Schlitz retirees do not authenticate the terminated labor agreement dated January 1, 1980, to December 31, 1981. Rather they authenticate the language that they quote

from it. (*See* Aff. of Patricia Demski ("Demski Aff.") ¶ 6 ("The complaint accurately quotes from the 1981 Schlitz labor agreements ....").) Thus, the Court will address only the language that has been authenticated; it will not consider the entire document for these summary judgment motions.

**5.** Pabst objects to the book and any facts that could be gleaned from it, arguing that it has not been authenticated. Pabst is correct that the book has not been authenticated, but the language that the retirees quote in their com-

The book explains that 100% of the usual and customary charge for prescription drugs will be covered after the participant pays a $2.00 deductible. (*Id.*) The book goes on to describe the types of drugs eligible for coverage, the maximum dispensing quantities, expenses not covered, how to file claims, and how claims will be paid. (*Id.*)

According to the retirees, another section of the 1978 Schlitz benefits book entitled "Medical Plan" contains the following language:

**Restoring Maximum Benefit**

The maximum benefit for each person under the Major Medical Coverage is $20,000. After your [sic] have used up one-third or more of your maximum benefit, the Jos. Schlitz Brewing company can restore all or a part of the your [sic] maximum benefit. All you have to do is furnish satisfactory proof, at your own expense, that you have received neither hospital nor medical care for six consecutive months.

The Jos. Schlitz Brewing Company will agree to restore, upon your request, one-third of the total after each successive six-month period without hospital or medical care; however, the maximum amount available to each person at any one time will never exceed the maximum benefit of $20,000.

(*Id.* ¶ 25.) The Schlitz retirees insist that prescription drug charges never counted as "medical care" for purposes of restoring the lifetime maximum as described above, until Pabst came along. Pabst does not contest this fact, except to say that the practice of not counting drugs as "medical care" must have been an administrative glitch.

In November 2003, Pabst informed the Schlitz retirees that it would be instituting a new prescription drug plan effective January 1, 2004. (PFF ¶ 38.) Besides Pabst beginning to consider prescription drug charges as medical care for purposes of restoring the lifetime maximums (*id.* ¶ 41), several other changes concerned the Schlitz retirees. First, Pabst announced a $100 annual deductible (which it later abandoned) that concerned the retirees because, they claim, the relevant documents do not contemplate deductibles.[6] Second, Pabst instituted a sliding scale of co-payments for prescription drugs, ranging from $2 for a 30–day supply of generics to $125 for a 90–day supply of "non-preferred brands." (*Id.*) Finally, Pabst instituted a $3000 annual maximum benefit. (*Id.*) Compounding difficulties for the Schlitz retirees, in May 2004, Pabst also began to apply expenses paid under the Supplemental Medical Medicare Plan to the lifetime maximum.

---

plaint has been authenticated, and may be considered by the Court.

6. The Schlitz retirees say that neither the closing agreements, the terminated labor agreements, nor the Schlitz Employee Benefits book in force at the time of the shutdown make any mention of deductibles or co-pays beyond the $2.00 co-pay in the language cited earlier in this opinion. (PFF ¶ 26.) This statement is too broad for the Court to accept.

Recall that only certain documents and language have been authenticated: (1) the quoted language in the Complaint from the 1981 Schlitz labor agreements (not the whole

agreement); (2) the quoted language in the Complaint from the Schlitz Employee Benefits book (not the whole book); (3) the November 6, 1981 shutdown agreement between Schlitz and Local 9 on behalf of the production employees; (4) the December 23, 1981 shutdown agreement between Schlitz and local9 on behalf of the Merchandising Men and Servicemen; and (5) the terminated CBA between several Milwaukee breweries (including Schlitz and Pabst) and Local 9.

Thus, the Court can say, at most, that the two shutdown agreements, the terminated CBA, and the language quoted in the complaint do not contemplate deductibles.

Frustrated by the changes to their insurance plan, the Schlitz retirees brought this action to force Pabst to provide benefits at the level the retirees have received for twenty-three years. Shortly after filing this lawsuit, and before any formal discovery had begun, the Schlitz retirees moved the Court for summary judgment as to Pabst's liability.

## III. THE SCHLITZ RETIREES' MOTION FOR SUMMARY JUDGMENT

The Schlitz retirees argue very simply that the facts support a judgment in their favor that Pabst is liable to provide them with the same level of benefits that they were receiving in 1981. They say those benefits have been provided to them without change for twenty-three years and that Pabst is now in breach of the 1981 shutdown agreements that provided those benefits.

The retirees rely heavily on *Diehl v. Twin Disc, Inc.*, 102 F.3d 301 (7th Cir. 1996), to support their position. Like the case at bar, *Twin Disc* involved a shutdown agreement in which Twin Disc, Inc. promised welfare benefits to its retirees. *Id.* at 302–03. The shutdown agreement in *Twin Disc*, like the shutdown agreement in this case, referred to other documents to describe the benefits that the retirees would receive. *Id.* Seven years later Twin Disc modified the retirees benefits, and the retirees sued. *Id.* at 304–05. The *Twin Disc* court addressed two issues: (1) whether a group of retirees were entitled to lifetime benefits [7] and (2) what level of benefits the retirees were entitled to (in other words, whether Twin Disc could modify the benefits). The Seventh Circuit

concluded that, based on the express language of the shutdown agreement, the retirees were entitled to lifetime benefits, and that those benefits should be "at a level substantially commensurate with the benefits" described in the documents incorporated by the shutdown agreement. *Id.* at 309–10. The primary document incorporated into the shutdown agreement that described the benefits to which the retirees were entitled was Twin Disc's Employee's Manual. *Id.* at 302–03.

The Schlitz retirees argue that they, like the retirees in *Twin Disc*, are entitled to the benefits described in their company benefits manual—the 1978 Schlitz benefits book. This is the fatal flaw in their argument. The *Twin Disc* court looked to the employee benefit books precisely because those books were incorporated into the shutdown agreement through a series of references. *See id.* at 303 ("The insurance agreements [referenced in the shutdown agreement], in turn, generally provided in Section 1 that benefits would be determined with reference to the 'insurance program . . . as set forth in the insurance section of the company's Employee's Manual.' "). In the case at bar, the Court does not look to the 1978 Schlitz benefits book because Bulletin S462a is *the* document describing the retirees prescription drug benefits. And in this case, Bulletin S462a is missing from the record.

Ignoring the fact that the 1978 Schlitz benefits book is not referenced in any contract before the Court, the Schlitz retirees ask: "And what difference could it make if [Bulletin S462a] turned up?" (Pls.' Reply Br. Supp. Mot. for Sum. J. at 8 n. 7.) "It would," they continue "*in all likelihood* be

---

7. There is no dispute in this case whether the benefits to which the retirees are entitled have a temporal limit: the parties agree (if only implicitly) that they do not. Pabst argues, however, that the benefits are limited monetarily; that is, the lifetime maximum is $20,000. The retirees maintain that the $20,000 lifetime maximum does not include the prescription benefits.

consistent with Schlitz's later description of the benefits in the 1978 insurance book in effect at the time the promise was made in 1981." (*Id.*) (emphasis added).

■ Because it is the Schlitz retirees who have moved for summary judgment, all inferences must be taken in Pabst's favor. Thus, "in all likelihood" is not good enough for summary judgment; and especially not before discovery has even begun. *See Twin Disc,* 102 F.3d at 305 ("Of course, we cannot interpret 'the contract,' until we identify the contract that we would interpret."). Bulletin S462a could say anything. Because the Schlitz retirees cannot conceive of wording in Bulletin S462a that could alter their rights, does not mean that Bulletin S462a does not have just that kind of language. For that matter, even if the Court could not dream up language that could alter the retirees rights, it would still be improper to grant summary judgment without that document in the record. In short, the Schlitz retirees' argument is bootless in two respects: the contents of the missing document are the very essence of a genuine issue of material fact, and the document's absence also prevents the Court from granting judgment for the retirees as a matter of law. The Schlitz retirees have failed to carry their burden of showing the Court that no genuine issue of material fact exists.

■ Perhaps the Schlitz retirees are making the argument (although not explicitly) that when a plan summary conflicts with the language of the plan documents, the plan summary controls, if the plan participants reasonably relied on the summary document. *See, e.g., Mathews v.*

*Sears Pension Plan,* 144 F.3d 461, 468 (7th Cir.1998); *Fuller v. CBT Corp.,* 905 F.2d 1055, 1060 (7th Cir.1990); *Edwards v. State Farm Mut. Auto. Ins. Co.,* 851 F.2d 134, 135–36 (6th Cir.1988). The flaw with this argument (assuming the retirees are making it) is that until Bulletin S462a is found—or, alternatively, until it can be shown that the language in the 1978 Schlitz benefits book is identical to or inclusive of the language in Bulletin S462a— the Court has no way of knowing whether a conflict exists between the 1978 Schlitz benefits book and Bulletin S462a. Bulletin S462a may contain some provision, absent from the 1978 Schlitz benefits book, that sheds light on this litigation. The Court cannot guess at the contents of Bulletin S462a, and it certainly cannot grant summary judgment on such conjecture.[8]

■ Pabst also argues that the Schlitz retirees' motion should be denied pursuant to Federal Rule of Civil Procedure 56(f); and Pabst is right. Rule 56(f) provides:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. p. 56(f). Rule 56(f) requires parties not to speculate, but to make specific assertions about what they may find in discovery that could create genuine issues of material fact. *United States v. On*

---

8. Not long ago, the Schlitz retirees moved this Court to obtain a preliminary injunction, or alternatively, a speedy decision with respect to their summary judgment motion. The Court informed the Schlitz retirees that it would issue a decision on their summary

judgment motion as quickly as possible. The retirees would have fared no better with a motion for a preliminary injunction because without Bulletin S462a the Court cannot say that they have a likelihood of success on the merits.

*Leong Chinese Merchants Ass'n Bldg.*, 918 F.2d 1289, 1295 (7th Cir.1990). Moreover, a party may not avail itself of the protections of Rule 56(f) if it has been dilatory in discovery. *United States v. Bob Stofer Oldsmobile–Cadillac, Inc.*, 766 F.2d 1147, 1153 (7th Cir.1985). Pabst passes both tests.

Pabst has filed the appropriate affidavit alleging that it cannot rebut certain of the Schlitz retirees' assertions without further discovery. Foremost among the items to be sought in discovery is Bulletin S462a, which is the lynchpin in this litigation, at least for the time being. Pabst also takes issue with the notion that the retirees welfare benefits plan has been consistently administered for twenty-three years. (Stevens Aff. ¶ 9.) Pabst believes that discovery will reveal that the plan administrators made discretionary choices within the boundaries of the plan and that those choices resulted in some retirees receiving benefits at a higher level than the plan required. (*Id.*) Pabst also asserts that discovery will reveal that Pabst is not altering the plan terms, but adopting administrative protocols within the plan administrator's discretion. (*Id.*)

These assertions are more than mere speculation. Pabst, like Schlitz, was a party to the CBA between Local 9 and several Milwaukee breweries, which granted brewery workers the level of benefits (including the prescription drug program defined in Bulletin S462a) that is the focus of this litigation. Pabst should have a sense of a plan administrator's rights under that plan. Pabst has offered sufficiently specific assertions about what it hopes to discover that could furnish it with grounds for opposing the Schlitz retirees position.

Moreover, Pabst has not been dilatory in discovery. In fact, besides the Rule 26 initial disclosures, no formal discovery has been conducted in this matter. The plaintiffs filed their summary judgment motion only 48 days after filing their lawsuit. Pabst made efforts to obtain information informally before responding to the Schlitz retirees' motion for summary judgment.[9] Accordingly, the Schlitz retirees' motion for summary judgment is denied and discovery will be conducted.

## IV. PABST'S MOTION FOR SUMMARY JUDGMENT

There are a handful of additional facts that Pabst proposes in support of its motion for summary judgment. The Court will recount those here. These new facts, in addition to the facts previously recited, form the basis for Pabst's motion for summary judgment.

### A. Facts

In 1995, while Stroh still administered the Schlitz retirees welfare plan, Stroh issued an updated summary plan description or plan document ("1995 Stroh plan document") that restated the terms of the plan covering the Schlitz retirees. (Pabst's Proposed Findings of Fact ("Pabst PFF") ¶ 4.) In 1999, when Pabst acquired certain assets and liabilities of Stroh, Stroh gave Pabst a copy of that 1995 Stroh plan document. (*Id.* ¶¶ 5, 6.) Pabst administered the plan according to the 1995 Stroh plan document until January 1, 2004, when Pabst issued a new plan document of its own ("2004 Pabst plan document"). (*Id.* ¶ 7.) Like the 1995 Stroh plan document and the 1978 Schlitz benefits book, the 2004 Pabst plan document requires insureds to pursue certain admin-

9. For example, Pabst called Blue Cross–Blue Shield in an attempt to obtain a copy of Bulletin S462a. (Stevens Aff. ¶ 14.) Blue Cross–Blue Shield informed Pabst it did not have the document. (*Id.* ¶ 15.) Nevertheless, there are other sources that may have the document.

istrative remedies when the plan administrator denies benefits. (*Id.* ¶¶ 8, 9, 11.) The Schlitz retirees admit that they made no attempts to exhaust any administrative remedies after Pabst allegedly altered the terms of their plan. (*Id.* ¶¶ 15–17.)

## B. Merits of Pabst's Claim

Pabst makes two arguments. First, it contends that the Court should grant it summary judgment because it is undisputed that the Schlitz retirees have failed to exhaust their administrative remedies. Second, Pabst argues that, if the Court will not grant complete summary judgment, it should grant partial summary judgment on damages. More specifically, Pabst maintains that in a hybrid ERISA/LMRA action the Schlitz retirees cannot recover either damages for all premiums paid to obtain replacement insurance or damages for mental distress and anguish caused by the alleged breach of contract.

### 1. Exhaustion of Administrative Remedies

Pabst contends that pursuant to the 2004 Pabst plan document, the Schlitz retirees were obligated to exhaust their administrative remedies before coming to Court. Pabst further maintains that even if its 2004 plan document does not control, the Schlitz retirees were still obligated to exhaust their administrative remedies pursuant to either the 1978 Schlitz benefits book or the 1995 Stroh plan document.

■■■■ Whether a litigant must exhaust administrative remedies before bringing suit in federal court under ERISA is a matter of discretion for the trial court. *Gallegos v. Mt. Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir.2000); *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th

Cir.1996); *Powell v. Am. Tel. & Tel. Comm., Inc.*, 938 F.2d 823, 825 (7th Cir. 1991); *Kross v. Western Elec. Co.*, 701 F.2d 1238, 1244 (7th Cir.1983); *see also Costantino v. TRW, Inc.*, 13 F.3d 969, 974 (6th Cir.1994); *Curry v. Contract Fabricators Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990). Plaintiffs may be excused from pursuing administrative remedies when (1) administrative remedies are not available or (2) pursuing administrative remedies would be futile. *Gallegos*, 210 F.3d at 808. The futility exception applies if the retirees can show that it is certain that their claim will be denied. *See, e.g., Ames v. American Nat'l Can Co.*, 170 F.3d 751, 756 (7th Cir.1999).

Pabst cites *Smathers v. Multi–Tool, Inc./Multi–Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191 (3d Cir.2002) to support its argument that the administrative procedures in the 2004 Pabst plan document dictate the Court's determination of whether the Schlitz retirees should have exhausted their administrative remedies. *Smathers* holds that the plan in effect on the date an administrator makes his benefits determination—not the plan language in effect when the benefits were first conferred on the insured—is the plan that defines an administrator's right to review a denial of benefits. *Id.* at 195–96. But the *Smathers* court specifically noted that the plan had not changed coverage or the substance of the insured's benefits. *Id.* at 195. Instead, only the scope of the plan administrator's discretionary authority on review was changed in the new plan document. *Id.*

The case at bar is distinct for two reasons. First, the 2004 Pabst plan document changes not only the scope of the administrative review,[10] but also the benefits that

---

10. The 1978 Schlitz benefits book provides for administrative review of benefits denials as follows:

For your protection, if the Plan Administrator denied your claim and you do not agree—you or your beneficiary have a right to appeal that decision. Under the life,

retirees receive. Second, and more importantly, there was no question in *Smathers* about whether the defendant had the legal authority to amend the terms of the plan. Here, however, the very legality of the changes made by Pabst is at issue. The Schlitz retirees maintain that Pabst has breached the 1981 shutdown agreements, and the benefits provided therein, by changing the level of benefits (and presumably the level of administrative review). Because of the missing plan document, Bulletin S462a, the Court cannot say how much discretion Pabst has to alter the level of benefits and the terms of administrative review provided for through the 1981 shutdown agreements, nor can Pabst. Indeed, Bulletin S462a may not shed light on that determination, but the Court can hardly speculate on what may or may not be illuminated by that document. The Schlitz retirees allege that Pabst has breached the 1981 shutdown agreements, and Pabst would like the Court to conclude, without knowing all the terms of the 1981 shutdown agreements, that the retir-

ees must abide by the terms of the allegedly breaching agreement. This the Court will not do.

*Smathers* nothwithstanding, Pabst's argument that the 2004 Pabst plan document controls fails because now that Pabst is moving for summary judgment the Schlitz retirees are entitled to the favorable inferences. Neither party asserts that Pabst had the power to amend the plan, and with the crucial Bulletin S462a missing, the Court cannot yet determine whether Pabst possessed that power. The inference to be drawn (in the retirees' favor) is that Pabst did not have authority to amend the plan's administrative procedures. So, the 2004 Pabst plan document cannot be the controlling document in this analysis.

■■■ In fact, the Schlitz retirees are not required to exhaust administrative remedies at all, under the terms of any of the agreements. The Court is not reviewing an administrator's denial of benefits (in which case the Court would require exhaustion of administrative remedies); it is

---

sickness and accident, medical, supplemental-medicare, prescription drug and dental plans, your appeal will be reviewed by the Employee Benefits Review Committee.

Your appeal to the Committee must be in writing and must state the reasons why you believe your claim was improperly denied .... Any such request for review must be made within 60 days from the date you received the decision of the Plan Administrator.

The Committee will render a prompt decision on your case, but in no event later than 120 days after the receipt of your request for review. The decision will be in writing and will include the specific reasons and specific references to pertinent plan provisions on which it is based.

(Stevens Aff. Ex. A. at 7.)

The language in the 2004 plan document issued by Pabst is considerably more broad, purporting to go beyond mere benefits denials.

This procedure must be used for appealing all issues, concerns, plan determinations or other matters of which a Covered Person may complain including but not limited to matters concerning adverse benefit determinations, benefit coverage, deductibles, eligibility, plan procedures, coordination of benefits, timeliness, cost management issues, the amount of contributions toward the cost of coverage that the Covered Person is required to pay to receive coverage under the Plan, termination of coverage, and any and all other Plan provisions. Failure to follow these procedures will result in the Plan's determination being final and binding.

.   .   .   .   .

No action may be brought against the Plan, the Employer, the Plan Administrator ...until the Covered Person ... first fully follows the above claims procedures (appeals procedures) and received a final determination from the Plan Administrator or its delegate.

(Pabst PFF ¶ 9.)

examining whether the administrator had the legal authority to alter a contract governed by ERISA and the LMRA.

*Costantino v. TRW, Inc.*, 13 F.3d 969 (6th Cir.1994) is instructive. In that case, TRW, Inc. amended its plan several times, thus affecting the level of pension benefits retirees would receive. *Id.* at 972–73. When the retirees sued TRW without first exhausting their administrative remedies, TRW argued that the retirees' suit should be dismissed. *Id.* at 973. The district court held that the retirees were not required to exhaust their administrative remedies because exhaustion would be futile. *Id.* at 974–75. The court considered the retirees' suit aimed at the legality of the plan amendments, not an interpretation of plan terms. *Id.* at 975. The Sixth Circuit affirmed the decision as a sound exercise of discretion, noting that if the retirees had used the administrative process, their benefits would have been recalculated and the same result reached. *Id.*

Pabst differentiates itself from the *Costantino* defendant by arguing that it has not been futile for the Schlitz retirees to challenge Pabst's changes. Pabst says it modified certain plan amendments when challenged by the Schlitz retirees. For example, Pabst eliminated a $100 annual prescription drug deductible that it had created and it altered its interpretation of how the $20,000 lifetime limit applies to retirees and their spouses.[11] Nevertheless, the amendments Pabst has made to the plan run far deeper than these. And the Court appreciates the distinction drawn in *Costantino* between challenging whether a plan was properly interpreted and challenging whether it was legally amended: the former is typically a question for administrative review while the latter is more likely a question for a court.

The case before this Court is a bit of a mixed bag. The retirees are unquestionably challenging the legality of certain changes to the plan (the new prescription co-pay structure, for example), but they are also challenging Pabst's interpretation of certain plan provisions (whether prescription coverage applies towards the lifetime maximum, for example). In a case similar to this one, the Seventh Circuit dismissed out-of-hand the defendant's argument that the case should have been dismissed because the plaintiffs failed to exhaust their administrative remedies. *Twin Disc*, 102 F.3d at 311 n. 6, discussed *supra* at 12. There, like here, the questions confronting the Court were: (1) are the plaintiffs entitled to lifetime benefits, and (2) to what level of benefits are they entitled? *See Twin Disc*, 102 F.3d 301. Making no mention of the need to exhaust administrative remedies, the Seventh Circuit considered the operative contracts and relegated Twin Disc's exhaustion argument to a footnote. Though *Twin Disc* contains surprisingly little analysis on the matter, this Court finds that the facts are congruous in every material way and that *Twin Disc* controls. Indeed, between the logic of *Costantino* and the implications of *Twin Disc*, this Court concludes that it would be futile for the retirees' to attempt to exhaust their administrative remedies. The requirement that parties exhaust their remedies under the LMRA does not save Pabst's argument either, particularly since

---

**11.** The retirees respond that Pabst modified its position only when the retirees threatened to file a lawsuit (or actually filed one). The retirees say this supports their contention that exhaustion would be futile. This argument is flawed. The retirees make a crucial omission: they do not allege that they ever tried administrative remedies (in fact, they concede that they did not). Yet they suggest that Pabst backed down *only* when suit was threatened. This argument is akin to killing a fly with a hammer and then insisting that a fly-swatter would never have worked.

*Twin Disc* also involved a hybrid ERISA/LMRA claim.[12] Pabst's motion for summary judgment is consequently denied.

## 2. Damages

Pabst also asks for partial summary judgment on the basis that the Schlitz retirees cannot receive, in a hybrid ERISA/LMRA action, damages for all premiums paid to obtain replacement insurance or damages for mental distress and anguish caused by the alleged breach of contract.

### a. Damages for Premiums Paid to Obtain Replacement Insurance

■ The Schlitz retirees seek to recover all premiums paid for replacement insurance. Pabst argues that such damages are extracontractual, which ERISA does not contemplate, and that for the Court to allow such damages under the LMRA would circumvent the purposes of ERISA. The Schlitz retirees respond by denying that the damages are extracontractual[13] and arguing only that these damages are available under ERISA. They make no

12. Pabst contends that, like ERISA, the LMRA requires the retirees to exhaust their administrative remedies for the contract dispute. Pabst cites to a number of cases for the unremarkable proposition that in an LMRA action plaintiffs must exhaust grievance and arbitration procedures established by the agreement. *See, e.g., Clayton v. Int'l Union*, 451 U.S. 679, 682, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) ("An employee seeking a remedy for an alleged breach of the collective-bargaining agreement between the union and his employer must attempt to exhaust any exclusive grievance and arbitration procedures established by that agreement."); *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) ("Ordinarily . . . an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."); *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 37, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) ("[W]here the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute."). But the shutdown agreements have no arbitration provision and the only administrative remedies incorporated are for the dispute of claims (assuming, as the Court must, that the 1978 Schlitz benefits book correctly states the appeals procedures provided by the plan). This brings the discussion full-circle, for the Court has already noted that the appeals process provided would not be useful to the plaintiffs in this case. Arguably, the process in the 1978 Schlitz benefits book does not even contemplate these types of disputes;

thus, the retirees need not exhaust that process.

13. The Schlitz retirees misplace a good deal of energy arguing in a conclusory fashion that the damages for mental anguish and emotional distress, as well as the damages for premiums paid for replacement insurance, are not extracontractual. Those damages are extracontractual. *See Corcoran v. United Health-Care, Inc.*, 965 F.2d 1321, 1335 (5th Cir.1992) ("When a plan beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is § 502(a)(1)(B). Damages that would give a beneficiary more than he or she is entitled to receive under the strict terms of the plan are typically termed extracontractual.").

The retirees seem to confuse damages that may be recovered in a contract action (which all of these damages may) with extracontractual damages, or damages that do not arise from the stated terms of the contract. Extracontractual damages may be recovered in a contract action under the proper circumstances. *See, e.g., Dan B. Dobbs, Dobbs Law of Remedies* § 12.1(1), at 8 (2d ed. 1993) ("Contract rights are mostly economic rights, so contract remedies are mostly economic remedies-that is, remedies based on objective economic loss. Punitive damages and mental anguish damages are thus considered 'extracontractual,' and usually denied in pure contract cases." (citations omitted)). The importance of this distinction will be evident shortly, when the Court shows that under ERISA, the plaintiffs may receive only that which should have been distributed under the plan or proper equitable remedies, not extracontractual remedies.

argument that these damages are available under the LMRA in a hybrid ERISA/LMRA action (by contrast, the Schlitz retirees make arguments that mental anguish damages are available under both ERISA and the LMRA). Thus, the Schlitz retirees have implicitly conceded that damages for premiums paid for replacement insurance are not available under the LMRA.

As for whether such damages are available under ERISA, they are not. ERISA is a comprehensive statute, the result of a decade of congressional study, that provides for specific remedies. *Great–West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002). The Supreme Court has repeatedly emphasized that the detail of ERISA suggests Congress "did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Great–West*, 534 U.S. at 209, 122 S.Ct. 708 (quoting *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) (quoting *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985))). Section 502(a)(3) of ERISA provides that a plan participant or beneficiary may bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The same section of the statute goes on to provide that a plan participant or beneficiary may also seek "other appropriate equitable relief." 29 U.S.C. § 1132(a)(3). "[O]ther equitable relief" means those types of relief typically available in equity. *Mertens*, 508 U.S. 248, 113 S.Ct. 2063. By contrast "[a]lmost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages .... And money damages are, of course, the classic form of *legal* relief." *Great–West*, 534 U.S. at 210, 122 S.Ct. 708 (citations omitted).

The premiums that the Schlitz retirees paid to obtain replacement insurance do not fall under any of ERISA's categories of damages. Damages for the premiums paid to obtain replacement insurance are not benefits due under the terms of the plan (thus, they are extracontractual), nor are they equitable relief. They are money damages—they are classic legal relief. *See id.* They are not available under ERISA.

Moreover, to the extent that these damages might be characterized as restitution [14] (because the plaintiffs suffer loss when they buy new insurance and Pabst benefits financially when it does not have to insure people it ought to be insuring), they are still not allowed because they are not equitable. Although restitution is both a legal and equitable remedy, "whether it is legal or equitable depends on the basis for [the plaintiff's] claim and the nature of the underlying remedies sought." *Great–West*, 534 U.S. at 213, 122 S.Ct. 708 (quotations omitted) (brackets in original). If the plaintiff cannot show that he has title or a right of possession in some particular property, but can show that he should be able to recover because the defendant has received a benefit from him, restitution lies at law. *Id.* Conversely, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular funds or property in the defendant's possession.*" *Id.* at 214, 122 S.Ct.

---

14. *See* Dobbs, *supra,* § 12.1(1) at 9 ("Restitutionary recoveries are based on the defendant's gain, not on the plaintiff's loss.").

708 (emphasis added). The Schlitz retirees' claim to recover premiums paid to other insurance companies is quite obviously not a claim for restitution in equity because their premiums lie in the hands of some other insurance company, not with Pabst. To the extent their claim may be characterized as one for restitution, it is a claim for restitution at law. *See id.* ERISA does not countenance such a claim. Consequently, the Schlitz retirees may not recover damages for premiums paid to obtain replacement insurance.

### b. Damages for Mental Distress and Anguish

The Schlitz retirees also seek damages for mental distress and anguish as a result of the alleged breach of contract. Like the damages for premiums paid for replacement insurance, damages for mental distress and anguish are not among ERISA's exclusive statutory remedies. The more difficult question is whether damages for mental distress and anguish are available under the LMRA in this hybrid action. This Court concludes that they are not.

The Schlitz retirees cite a wealth of cases for the proposition that mental anguish damages can be recovered in a contract action if the parties realized at the time they contracted that such damages would be the natural result of a breach (relying on the longstanding rule of *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng. Rep. 145 (1854)). But the retirees cite only run-of-the-mill contract cases for this proposition; they do not acknowledge the unique predicament that this lawsuit presents—a meeting at the intersection between ERISA and the LMRA and the relationship between those laws.

For its part, Pabst consistently confuses the tort of intentional infliction of emotional distress with the contract remedy of mental distress and anguish damages, recoverable when mental distress and anguish are the natural result of a breach of contract.[15] Despite this confusion, Pabst also drums up cases that are instructive. A review of those cases indicates that, while there is a small minority of courts that will allow emotional distress damages under the LMRA in a hybrid ERISA/LMRA action (if the circumstances are right), *see, e.g., UAW v. Federal Forge,* 583 F.Supp. 1350 (W.D.Mich.1984); *but see- Helwig v. Kelsey–Hayes Co.,* 907 F.Supp. 253, 255–56 (E.D.Mich.1995) (calling *Federal Forge* into question and doubting that its holding is still good law); *UAW v. Echlin, Inc.,* 670 F.Supp. 697, 704 (E.D.Mich.1986) (same), the majority of courts that have considered the issue have ruled that such damages would allow plaintiffs to do an impermissible end-run around the restrictions of ERISA, *see United Steelworkers of America, AFL– CIO–CLC v. Connors Steel Co.,* 855 F.2d 1499, 1509–10 (11th Cir.1988); *Stewart v. KHD Deutz of America Corp.,* 75 F.3d 1522, 1528 (11th Cir.) (noting in dicta that extracontractual damages under § 301 of the LMRA would be barred in a hybrid ERISA/LMRA action); *LaForest v. Honeywell Int'l, Inc.,* 2004 WL 1925490 at *9 (W.D.N.Y. Aug.27, 2004); *Gilbert v. Doehler–Jarvis, Inc.,* 137 F.Supp.2d 916, 918–19 (N.D.Ohio 2001), *vacated as moot on other grounds by* Nos. 01–3831/3885 (6th Cir. Aug. 9, 2004); *Ragan v. Navistar Int'l Transp. Corp.,* 1989 WL 117486 at *2 (D.Kan. Sept.20, 1989).

The Court has already recounted the carefully constructed remedies Congress

---

**15.** In its reply brief Pabst pays lip service to the distinction, but time and again Pabst cites cases in which the Seventh Circuit has held that either ERISA or the LMRA preempts damages for the tort of intentional infliction of emotional distress.

has conferred on ERISA plaintiffs. The Supreme Court has held that ERISA's statutory remedies are ERISA's exclusive remedies. *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 52–53, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). To be sure, the Supreme Court directed its discussion in *Pilot* at the preemption of state-law remedies, but its holding is instructive in this case, too, where the retirees seek the remedy of another federal cause of action to recover benefits that are due to them under a health benefits plan. Allowing the Schlitz retirees to recover mental distress and anguish damages because their health benefits, which they claim have been denied, arose in the context of a contract governed by the LMRA, would allow them a windfall that no other ERISA-plan participants or beneficiaries could recover (except those fortunate enough to have their benefits arise from a CBA or other agreement governed by the LMRA). In light of the Supreme Court's unequivocal holding that ERISA provides the exclusive remedies for plan participants and beneficiaries who are denied benefits under ERISA plans, this Court joins with the growing chorus of courts that has refused to allow plaintiffs to recover for mental anguish and emotional distress. *See Connors Steel Co.,* 855 F.2d at 1509–10; *KHD Deutz of America,* 75 F.3d at 1528; *LaForest,* 2004 WL 1925490 at *9; *Doehler–Jarvis, Inc.,* 137 F.Supp.2d at 918–19, *vacated as moot on other grounds by* Nos. 01–3831/3885 (6th Cir. Aug. 9, 2004); *Ragan,* 1989 WL 117486 at *2.

## V. CONCLUSION

The Schlitz retirees moved quickly for summary judgment in this action, understandably concerned about the changes that Pabst made to their benefits plan. But the retirees have moved the Court prematurely, asking it to grant summary judgment in their favor without a key document—Bulletin S462a—in the record.

The retirees have also failed to show that Bulletin S462a is embodied by the 1978 Schlitz benefits book. The Court cannot declare that the retirees are entitled to judgment as a matter of law on a contract, when the Court has incomplete information on the contract's terms. Not only does the Court need to know the terms of the contract in order to pass judgment, but Pabst is entitled to conduct discovery so that it may respond to the allegations against it in an informed manner.

Pabst is not entitled, however, to force the retirees to exhaust administrative remedies. It is entirely possible that Pabst did not have the authority to alter the terms of the benefits plan in any way, in which case the broad language of the 2004 Pabst plan document does not control the administrative review process. Moreover, if the 1978 Schlitz benefits book properly embodies the terms of the contract, the plan does not necessarily contemplate administrative review of challenges to the legality of plan amendments. At any rate, it would be futile for the retirees to exhaust their administrative remedies when the legality of plan changes, not the denial of benefits, is being challenged.

Finally, the retirees are limited by ERISA in the damages they may receive. Damages for premiums paid to obtain replacement insurance, as well as damages for mental distress and anguish, are extra-contractual and are not contemplated by ERISA's exclusive statutory remedies. Moreover, allowing the retirees to recover mental distress and anguish benefits under the LMRA in a hybrid ERISA/LMRA action would permit an improper end-run around ERISA's exclusive statutory remedies.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

(1) The Schlitz retirees' Motion for Summary Judgment as to Liability and Permanent Injunction [Docket No. 16] is **DENIED**.

(2) Pabst's Cross–Motion for Summary Judgment [Docket No. 37] is **GRANTED IN PART** and **DENIED IN PART**:

   a) Pabst's motion for summary judgment on the grounds that the Schlitz retirees must exhaust their administrative remedies is **DENIED**.

   b) Pabst's motion for partial summary judgment on the grounds that the Schlitz retirees are not able to recover damages for premiums paid to obtain replacement insurance or damages for mental distress and anguish is **GRANTED**.

3) Both parties' requests for attorneys' fees are **DENIED**.

4) Discovery **SHALL** be conducted in this case.